IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAY 2 2 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

AMANDA PRINCE,

Plaintiff,

v.

CHRISTIAN WALKER MORPHIS, in his Individual Capacity, MARCUS DANIELS, in his Individual Capacity, MIKE A. HAGAR, in his Official Capacity,

Defendants.

Case No. 4:26CV531-DPM

****JURY TRIAL DEMANDED*

**COMPLAINT**

NOW COMES Plaintiff, AMANDA PRINCE ("PLAINTIFF"), by and through her attorneys, LAUX LAW GROUP, and for her cause of action against Defendants, CHRISTIAN WALKER MORPHIS, MARCUS DANIELS and MIKE A. HAGAR, ("DEFENDANTS"), states as follows:

**INTRODUCTION**

It is beyond reasonable debate that on December 17, 2023, Defendant, CHRISTIAN WALKER MORPHIS ("MORPHIS"), a state trooper, planted drugs on PLAINTIFF in an attempt to frame her on a drug trafficking charge—his unlawful conduct was captured on his own police video. PLAINTIFF's complaint thus seeks redress for MORPHIS' brazen act but it also alleges that MORPHIS was cut a tremendous break by the very investigators whose duty it was to bring him to justice. Indeed, the opposite occurred, reflecting grave institutional failures.

Therefore, PLAINTIFF brings the instant lawsuit under federal law pursuant to 42 U.S.C. § 1983 seeking redress for violations of her constitutional rights—specifically, under the Fourth

This case assigned to District Judge Marshall
and to Magistrate Judge Ervin

and Fourteenth Amendments to the United States Constitution. PLAINTIFF also alleges violations of state law, namely, the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101, *et seq.* With the instant lawsuit, PLAINTIFF seeks to recover compensatory and punitive damages against the DEFENDANTS for violating her constitutional rights.

**JURISDICTION AND VENUE**

1. This case arises under 42 U.S.C. § 1983 and Arkansas law. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The unconstitutional practices alleged to have been committed against PLAINTIFF were committed in southwestern Arkansas.

2. Venue is proper in the Eastern District of Arkansas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in the district, PLAINTIFF was a resident of the district at the time of DEFENDANTS' alleged conduct, and this is where PLAINTIFF has suffered harm from DEFENDANTS' actions.

**PARTIES**

3. At all relevant times, PLAINTIFF resided in Monticello, Arkansas, which is located in Drew County. At all relevant times, including December 17, 2023, PLAINTIFF was a citizen of the United States and, therefore, she was entitled to all constitutional protections afforded U.S. citizens.

4. On December 17, 2023, and at all relevant times, MORPHIS was employed by the State of Arkansas as an ASP trooper at the rank of Trooper First Class and was acting under the color of state law, within the scope of his employment.

5. On December 17, 2023, and at all relevant times, MARCUS DANIELS ("DANIELS") was employed by the State of Arkansas as an ASP trooper at the rank of Lieutenant and was acting under the color of state law, within the scope of his employment.

6. At all relevant times, DANIELS was an ASP investigator with the Office of Professional Standards (OPS) Office. OPS is the ASP internal affairs unit responsible for investigating complaints against troopers and employee misconduct. As an OPS investigator, DANIELS was responsible for investigating alleged misconduct and ensuring accountability and adherence to ASP policies.

7. On December 17, 2023, and at all relevant times, including several years prior thereto, MIKE A. HAGAR ("COL. HAGAR"), who holds the rank of colonel in ASP, was the ASP Director and was acting under the color of state law, within the scope of his employment.

8. On December 17, 2023, and at all relevant times, the State of Arkansas delegated to COL. HAGAR final policy-making authority in terms of creating, adopting, implementing and/or enforcing ASP policies. At all relevant times, pursuant to the authority vested in ASP directors, COL. HAGAR was empowered to terminate ASP troopers for cause, to discipline ASP troopers or, if warranted, to modify an ASP trooper's employment duties for public safety reasons.

9. At all relevant times, DEFENDANTS each had a duty to report unlawful conduct committed by ASP officers in the scope of their employment, or to directly address it, whenever said unlawful conduct becomes known to them.

## FACTUAL ALLEGATIONS

### MORPHIS Pulls PLAINTIFF Over for Driving On a Suspended Driver's License

10. On December 17, 2023, around 3:45 pm, PLAINTIFF was driving a red GMC Sierra on U.S. Highway 425 in Monticello, Arkansas when she was noticed by MORPHIS who

was patrolling the area in his police vehicle. MORPHIS knew PLAINTIFF from a prior encounter wherein he cited her for driving on a suspended license. MORPHIS initiated a traffic stop of PLAINTIFF, pulled her over and instructed her to exit her vehicle, which she peaceably did. See Image No. 1 below.




**Image No. 1: Per MORPHIS' instruction, PLAINTIFF exits her truck during a traffic stop on suspicion of driving on a suspended license.**

11. MORPHIS told PLAINTIFF he would arrest her for driving on a suspended license which she readily and truthfully admitted doing. MORPHIS then handcuffed PLAINTIFF's hands behind her back, walked her to his police vehicle and then placed her in the backseat.

<u>MORPHIS Plants a 16 Gram Bag of Cocaine on PLAINTIFF During the Traffic Stop</u>

12. About 10 minutes after MORPHIS placed PLAINTIFF in his police vehicle, and unbeknownst to PLAINTIFF whose vision was obstructed by the backseat partition and restraint cage, MORPHIS opened his front passenger side door and surreptitiously tossed a 16 gram bag of cocaine in the front passenger floorboard of his police vehicle. MORPHIS' interior vehicle camera captured MORPHIS' act of tossing the cocaine on to his police vehicle floorboard. See Image Nos. 2-6 below.



Image No. 2: MORPHIS (not pictured) opens his passenger side car door. PLAINTIFF (circled), handcuffed behind partition, is seated in the backseat.



Image No. 3: MORPHIS (not pictured) tosses a bag of cocaine (circled) onto the passenger side floorboard of his car (cocaine in midair).



**Image No. 4: The bag of cocaine (circled) tossed by MORPHIS (not pictured) continues its flight through the air inside MORPHIS' police vehicle.**



**Image No. 5: The bag of cocaine (circled) tossed by MORPHIS (not pictured) continues its flight through the air further inside MORPHIS' police vehicle.**



**Image No. 6: The bag of cocaine (now unseen) tossed by MORPHIS lands on the passenger side floorboard of his car.**

13. After MORPHIS surreptitiously tossed the bag of cocaine onto his passenger side floorboard and shut the car door, he walked around to the driver side, entered the vehicle and drove off toward the county jail with PLAINTIFF in the back seat, like nothing had just happened.

14. During the ride from the traffic stop to the county jail, PLAINTIFF sat in the back seat, occasionally leaning forward, with her hands cuffed behind her body. During the ride to jail, PLAINTIFF did not erratically move her body, nor dig in or near her waistline.

15. PLAINTIFF was completely unaware that a 16 gram bag of cocaine was on MORPHIS' front passenger side floorboard next to MORPHIS.

16. After MORPHIS and PLAINTIFF arrived at the jail, MORPHIS exited the vehicle and went around to the back right passenger door where PLAINTIFF was located. MORPHIS opened the door and PLAINTIFF exited the vehicle. MORPHIS then directed PLAINTIFF to the front of his vehicle where she would be unable fully see the interior of the backseat area she had left. See Image No. 7 below.



**Image No. 7: MORPHIS instructs PLAINTIFF to go to the front of his vehicle while he takes the drugs from the front passenger seat and plants them in the backseat near where PLAINTIFF sat.**

17. As PLAINTIFF stood at the front of the police vehicle, handcuffed and totally oblivious to MORPHIS' clandestine and unlawful acts, MORPHIS opened his front passenger door under the guise of getting a rubber glove from his vehicle console. When MORPHIS leaned in the vehicle from the door, he grabbed a rubber glove, but he also retrieved the 16 gram bag of cocaine he tossed in there before the drive.

18. MORPHIS then secretly transported the 16 gram bag of cocaine from the front passenger seat to his backseat.

19. MORPHIS then proceeded to do a perfunctory "search" of the backseat area where PLAINTIFF previously sat. After "searching" the area for a few seconds, MORPHIS claimed that he "found" the 16 gram bag of cocaine on the floorboard in the immediate area where PLAINTIFF was located.

20. MORPHIS took the 16 gram bag of cocaine from the backseat area of his police vehicle, walked to the front of the vehicle and placed the bag on the hood. See Image No. 8 below.




**Image No. 8: Screenshot from MORPHIS' dashboard camera showing him placing the bag of cocaine on the hood of his police vehicle (circled).**

<u>MORPHIS Falsely Accuses PLAINTIFF of Possessing the 16 Gram Bag of Cocaine He Previously Planted in the Vehicle</u>

21. After placing on his vehicle hood the 16 gram bag of cocaine he himself planted inside his police vehicle, MORPHIS turned to PLAINTIFF and told her that he found it in the back seat where she was sitting. See Image No. 9 below.



**Image No. 9: MORPHIS falsely informs PLAINTIFF that he found a bag of cocaine on the backseat floorboard near where she sat.**

22. MORPHIS told PLAINTIFF it was a waste of her time to deny ditching the 16 gram bag of cocaine in the backseat because his police vehicle has a camera fixed on the area where she sat and it would have captured and recorded everything she did.

23. Shocked, PLAINTIFF adamantly told MORPHIS she had no drugs on her person and the bag of drugs produced by MORPHIS was not hers. She vehemently denied having any drugs in her possession at any time during the traffic stop encounter.

24. MORPHIS continued the unlawful charade, gaslighting PLAINTIFF by telling her the 16 gram bag of cocaine had to be hers because he had just taken his police vehicle to the carwash where he specifically vacuumed the vehicle interior, including the entire backseat. MORPHIS told PLAINTIFF there was no 16 gram bag of cocaine in the backseat when he was meticulously cleaning it, and she was the only occupant in his backseat between the carwash and the traffic stop. It was really that simple, MORPHIS told PLAINTIFF.

25. PLAINTIFF was astounded and devastated by MORPHIS' false accusation and untruthfulness. When she realized that MORPHIS was intent on lying and trying to frame her for a serious crime she did not commit, she became physically and emotionally distressed. Nonetheless, PLAINTIFF steadfastly maintained her innocence.

26. MORPHIS arrested PLAINTIFF and charged her with possession with intent to deliver, tampering with physical evidence and obstructing governmental operations.

27. To be clear, MORPHIS arrested PLAINTIFF on a Class C Felony drug trafficking charge based entirely on a 16 gram bag of cocaine that he, in fact, planted on her. A Class C Felony is punishable by up to 10 years in prison and a $15,000 fine.

<u>MORPHIS Drafts a False Police Report and Provides False Information to Prosecutors</u>

28. Later that day, MORPHIS drafted an official police report wherein he falsely claimed he observed the drugs on the backseat floorboard that was not there prior to PLAINTIFF being in his vehicle. See Image No. 10 below. In support of this claim, MORPHIS stated he vacuumed out his backseat shortly before arresting PLAINTIFF and there were no drugs there.

See Image No. 10 below. In his official police report, MORPHIS falsely claimed that his interior camera video showed that PLAINTIFF was "moving very erratically" and "appeared to be digging in her waistline shortly before the narcotics were found." See Image No. 10 below.

NARRATIVE

On December 17, 2023, at approximately 3:47 PM, I Trooper Walker Morphis was patrolling United States Highway 425 near University Drive in Monticello. While patrolling, I observed a red GMC Sierra, which I immediately recognized from previous encounters to be owned and operated by Amanda Prince. Through my previous encounters, I knew that Ms. Prince had a suspended license and was not legally allowed to be operating the vehicle. A traffic stop was conducted.

Upon initiating the traffic stop, Ms. Prince was removed from the vehicle and placed under arrest for driving on a suspended license. Ms. Prince was placed in my backseat while I waited for Reggie's towing to arrive to retrieve her vehicle. Once Reggie's towing had her vehicle, Ms. Prince was transported to Drew County Detention Center. Once at the detention center, I opened my back door to allow Ms. Prince to step out. Immediately after stepping out, I observed a clear baggie with a white substance, which later field tested positive for cocaine, in the floorboard that was not there prior to Ms. Prince being in my vehicle. Shortly before contacting Ms. Prince, I had washed my car and vacuumed out my backseat, in the immediate area where Ms. Prince was. There were also red footprints where white substance was. This red clay was transferred from Ms. Prince's shoes from the location of the traffic stop.

A review of my backseat camera revealed Ms. Prince moving very erratically for a short period of time and appeared to be digging in her waistline shortly before the narcotics were found.

**Image No. 10: MORPHIS' official police report wherein he falsely claims he recovered a bag of cocaine from PLAINTIFF.**

29. Even later on December 17, 2023, MORPHIS contacted Sgt. James Slaughter of the Tenth Judicial Drug Task Force to transfer PLAINTIFF's case for criminal prosecution. In that communication, MORPHIS made material misrepresentations about PLAINTIFF to Sgt. Slaughter and many of these misrepresentations wound up becoming part of Sgt. Slaughter's probable cause affidavit. See Image No. 11 below.

**FACTS ESTABLISHING ELEMEMT(S) OF THE MOST SERIOUS OFFENSE AND IDENTIFICATION OF THE SUSPECT:**

On or about December 17, 2023, Agent James Slaughter of the Tenth Judicial Drug Task Force received a call from State Trooper Walker Morphis about an incident involving Amanda Prince. Trooper Morphis advised Agent Slaughter that he initiated a traffic stop on a red pick-up truck, driven by Prince. Trooper Morphis knew that Prince was driving on a suspended driver license. Trooper Morphis placed Prince in the rear of his patrol car while waiting for a wrecker to tow the vehicle.

Once Trooper Morphis arrived at the Drew County CDF, to book Prince into the jail on the charge of Driving on Suspended DL, he went to get Prince from the rear seat of the patrol car and saw a bag of a white substance, in the floor, by Prince's feet. Trooper Morphis retrieved the bag.

Trooper Morphis tested the substance, and it tested positive for cocaine. The bag weighed approximately 16 grams. Trooper Morphis advised Agent Slaughter that he knew Prince put the bag of substance in his patrol car due to him cleaning and vacuuming his car prior to placing Prince in the rear seat. Trooper Morphis advised that he has not transported or had anyone in the rear seat area between the time he vacuumed the car and placed Prince in the car.

Prince was booked in the CDF on the charges of Driving on Suspended Dl and Possession of Methamphetamine or Cocaine with Purpose due to the weight of the substance.

**Image No. 11: Excerpt from Sgt. James Slaughter arrest warrant affidavit containing information provided by MORPHIS**

30. For instance, MORPHIS falsely told Sgt. Slaughter that actually saw the 16 gram bag of cocaine "in the floor, by [PLAINTIFF's] feet." See Image No. 11 above. The information

MORPHIS provided to Sgt. Slaughter would be used to criminally prosecute PLAINTIFF, a fact of which MORPHIS was aware at all times.

31. PLAINTIFF suffered considerable financial hardship as a result of MORPHIS' unlawful acts.

32. As a result of the false statements contained in MORPHIS' official police report, as well as the false statements he conveyed to Sgt. Slaughter, PLAINTIFF was required to post a $5000 bond to be released. She was assessed hundreds of dollars in costs and fees associated with the impoundment of her truck. By the time she was released from jail, her truck impound fees were more than she could afford, so she wound up losing her truck. Without her truck—her only means of transportation—PLAINTIFF wound up losing her job, which caused her even greater hardship.

33. PLAINTIFF suffered emotionally. For months she faced prosecution for a serious crime she knew she did not commit. For months, she understood that MORPHIS would be willing take the witness stand and perjure himself in order to falsely incriminate her and put her behind bars for years.

<u>MORPHIS Testifies Against PLAINTIFF at Her Trial and Perjures Himself</u>

34. MORPHIS intentionally provided false testimony at PLAINTIFF's September 20, 2024 criminal trial.

35. During his sworn testimony, MORPHIS claimed he found the 16 gram bag of cocaine on the backseat floorboard near where PLAINTIFF sat, which was false.

36. During his sworn testimony, MORPHIS claimed that PLAINTIFF moved erratically and dug in her waistband, which was false.

37. During his sworn testimony, MORPHIS claimed that he vacuumed the interior of his police vehicle prior to arresting PLAINTIFF and there were no drugs in the backseat of the vehicle at that time, but there were after she was removed from the vehicle, which was false.

38. On September 20, 2024, PLAINTIFF was found not guilty of the drug charges.

PLAINTIFF Files a Citizen's Complaint Against MORPHIS But DANIELS Protects MORPHIS By Conducting a Sham Investigation

39. On October 15, 2024, PLAINTIFF filed a citizen's complaint against MORPHIS based on his planting the cocaine on her, thus framing her on felony drug charges. PLAINTIFF specifically made claims to the OPS investigator, DANIELS, of "fabrication of evidence" and "perjury" committed by MORPHIS.

40. PLAINTIFF told DANIELS, "[i]t has come to my attention that video evidence indicates the potential planting of drugs by Officer Walker Morphis, which raises severe concerns regarding the integrity of this officer and the department as a whole. Such behavior is unacceptable and undermines public trust in law enforcement."

41. DANIELS opened an OPS investigation of MORPHIS.

42. During the investigation, MORPHIS told DANIELS: "I had just left the carwash and I didn't see [the cocaine at that time], so it had to be hers. I put everything in when I vacuumed out my backseat that bag of dope was not there…I didn't see that bag of dope, and I know [PLAINTIFF] was the only person in my backseat after vacuuming it out."

43. DANIELS never asked MORPHIS if he planted the bag of cocaine on PLAINTIFF. DANIELS never confronted MORPHIS about the video which clearly shows him tossing the bag of cocaine in his police vehicle. DANIELS never even asked him to identify the item or material he clearly tossed on his front passenger side floorboard.

44. DANIELS never interviewed PLAINTIFF.

45. By allowing MORPHIS to falsely claim that he mistook cocaine from a prior traffic stop as cocaine left by PLAINTIFF, DANIELS saved MORPHIS from having to face criminal penalties for evidence planting, untruthfulness, putting knowingly false information in a police report and perjury.

46. There is zero mention in DANIELS' investigation report of the fact that MORPHIS' own police vehicle video captures him planting a 16 gram bag of cocaine on PLAINTIFF.

47. There is no mention in DANIELS' investigation report of MORPHIS' untruthfulness during PLAINTIFF's arrest, his evidence planting during his investigation or the perjury he committed during PLAINTIFF's criminal trial.

48. On November 1, 2024, DANIELS completed his investigation of PLAINTIFF's citizen's complaint against MORPHIS.

49. In November 2024, MORPHIS was questioned by ASP's Command Staff Review Board (CSRB) at a hearing related to the allegations contained in PLAINTIFF's citizen's complaint. Nearly a dozen high ranking ASP officers, including DANIELS, were copied to MORPHIS' notice letter which advised him of the hearing.

50. CSRB never interviewed PLAINTIFF.

51. On January 8, 2025, MORPHIS was terminated based on three watered down violations of ASP policy: (1) "writing details in an incident report to support a charge that was not supported by his in-car video"; (2) "making inaccurate statements"; and (3) "not conducting any type of search of [PLAINTIFF] prior to placing her in his patrol vehicle and transporting her to jail."

52. The "inaccurate statements" made by MORPHIS which were referenced by CSRB did not even include his false statement that MORPHIS found the 16 gram bag of cocaine in the

backseat near PLAINTIFF when, in fact, he himself planted the narcotics there. Instead, the CSRB cried foul over the fact that MORPHIS reported to have seen PLAINTIFF moving her body suspiciously in his backseat while the interior vehicle video footage refutes this.

53. To be clear, even though video of MORPHIS tossing the 16 gram bag of cocaine in his police vehicle certainly refutes his official police statement that he found them on the backseat floorboard near PLAINTIFF, CSRB made no mention of this "inaccurate statement" in MORPHIS' termination letter.

54. There is zero mention in MORPHIS' termination letter of the fact that MORPHIS' own police vehicle video captures him planting a 16 gram bag of cocaine on PLAINTIFF.

55. There is no mention in the letter of MORPHIS' untruthfulness during PLAINTIFF's arrest, his evidence planting during his investigation or the perjury he committed during PLAINTIFF's criminal trial.

56. The following ASP officers either drafted official memoranda and/or correspondence about PLAINTIFF'S citizen's complaint against MORPHIS or were copied to same: DANIELS; COL. HAGAR; Major Ron Casey; Capt. Rick Neill; Major Stacie Rhoads; Capt. Chris Goodman; Capt. Wesley Smithee; LTC Mike Kennedy; LTC Jason Aaron; Cpl. Dean Pitchford; Cpl. Christiana McKibben.

57. On or around December 4, 2025, HAGAR authorized the following statement in defense of MORPHIS and DANIELS' OPS investigation:

> The incident at the heart of this story was thoroughly investigated by ASP's Office of Professional Standards. Our agency has been completely transparent about our review process and results. We stand by the decision to terminate this employee, and have taken action to have him decertified because of serious policy violations outlined in his termination letter. The allegations made by Ms. Prince, however, are erroneous and irresponsible. There is zero evidence to support allegations that this Trooper "planted drugs."

**COUNT I—FALSE ARREST**
**MORPHIS**

58. PLAINTIFF hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count I.

59. MORPHIS did not have a reasonable belief that PLAINTIFF committed the crime of Possession of Methamphetamine or Cocaine with Purpose to Deliver on December 17, 2023. MORPHIS did not have probable cause to arrest PLAINTIFF on this charge but arrested her, nonetheless. MORPHIS did not act in good faith in pursuing PLAINTIFF's arrest on December 17, 2023.

60. MORPHIS reported PLAINTIFF to the Tenth Judicial Drug Task Force, setting the criminal prosecution process in motion, all the while knowing that he did not have probable cause for her arrest.

61. MORPHIS' arrest of PLAINTIFF was not lawful because it was not supported by probable cause. MORPHIS' conduct was intentional. Therefore, MORPHIS is liable to PLAINTIFF for false arrest.

62. By reason of the conduct of MORPHIS, PLAINTIFF was subjected to an unlawful arrest and detention which caused her personal injuries, great pain, fear, apprehension and emotional distress. As a result of MORPHIS' conduct, PLAINTIFF suffered harm and is entitled to compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**COUNT II—SUBSTANTIVE DUE PROCESS**
**MORPHIS AND DANIELS**

63. PLAINTIFF hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count II.

64. The substantive due process clause in the Fourteenth Amendment safeguards individuals from unwarranted governmental intrusions into their personal lives. To prove a violation of substantive due process, a plaintiff must show (1) that a government actor violated one or more fundamental constitutional rights, and (2) that the conduct of the government actor was shocking to the contemporary conscience.

65. MORPHIS and DANIELS had no legitimate basis for depriving PLAINTIFF of her constitutionally protected liberty interests. MORPHIS and DANIELS had an intent to harm PLAINTIFF and/or were deliberately indifferent as to the risk of harm caused by their conduct.

66. MORPHIS and DANIELS' conduct is outrageous and shocks the conscience, thereby violating PLAINTIFF's substantive due process rights.

67. Acting under color of law and under the customs, practices, and policies of COL. HAGAR, DEFENDANTS' directed, oversaw, performed and approved PLAINTIFF's arrest despite the absence of probable cause, in violation of the U.S. Constitution. MORPHIS and DANIELS' conduct shocks the conscience and constitutes a violation of PLAINTIFF's substantive due process rights which are protected by the Fourteenth Amendment.

68. By reason of the conduct of MORPHIS and DANIELS, PLAINTIFF was deprived of rights, privileges and immunities secured to her by the Fourteenth Amendment to the U.S. Constitution, and laws enacted thereunder. Therefore, MORPHIS and DANIELS are liable in damages to PLAINTIFF, including compensatory damages, actual damages, punitive damages, costs and attorney's fees.

## COUNT III—ARKANSAS CIVIL RIGHTS ACT
## MORPHIS AND DANIELS

69. PLAINTIFF hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count III.

70. The Arkansas Civil Rights Act ("ACRA") imposes liability when state officials acting under the color of state law deprive persons of their rights under the Arkansas Constitution. In construing ACRA, federal courts are guided by state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983.

71. MORPHIS and DANIELS' conduct was unreasonable and served no legitimate purpose, thereby violating PLAINTIFF's rights under the Arkansas Constitution.

72. As a result of MORPHIS and DANIELS' conduct, PLAINTIFF suffered harm and is entitled to compensatory damages, actual damages, punitive damages, costs and attorney's fees.

**COUNT IV—CIVIL CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS**
**MORPHIS AND DANIELS**

73. PLAINTIFF hereby incorporates and re-alleges the above paragraphs as though fully alleged in Count IV.

74. At all times alleged, MORPHIS and DANIELS conspired, under color of law, to deprive PLAINTIFF of her First Amendment right to access the courts.

75. MORPHIS and DANIELS reached an agreement, acted in concert and committed overt acts in furtherance of the conspiracy. MORPHIS and DANIELS conspired to frustrate PLAINTIFF's efforts to have criminal charges filed against MORPHIS planting evidence on PLAINTIFF and endeavoring to have her criminally prosecuted. MORPHIS arrested PLAINTIFF on criminal charges for which he knew probable cause did not exist, and this conduct directly and proximately caused PLAINTIFF significant physical and emotional injury.

76. As set forth above, MORPHIS and DANIELS violated PLAINTIFF's First, Fourth and Fourteenth Amendment rights, and conspired to do so. The acts and omissions described above proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFF by the U.S. Constitution, and laws enacted thereunder.

77. As a result of MORPHIS and DANIELS' conduct, PLAINTIFF suffered harm and is entitled to compensatory damages, actual damages, punitive damages, costs and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, AMANDA PRINCE, by and through her attorneys, LAUX LAW GROUP, seeks the following relief for the unlawful practices and unconstitutional conduct described above:

1. That DEFENDANTS be required to pay PLAINTIFF full compensatory damages, including emotional distress, impairment of reputation, personal humiliation, and mental anguish and suffering;

2. That DEFENDANTS be required to pay punitive damages;

3. That DEFENDANTS be required to pay reasonable costs and attorney fees; and

4. That PLAINTIFF receive any other legal and just relief as this Honorable Court deems appropriate.

Respectfully submitted,

Michael J. Laux
Michael J. Laux
E. Dist. Arkansas Bar No. 6278834
One of the Attorneys for PLAINTIFF
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
mikelaux@icloud.com