IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AMANDA PRINCE,
PLAINTIFF,
v.
CHRISTIAN WALKER MORPHIS, in his Individual Capacity, MARCUS DANIELS, in his Individual Capacity, and MIKE A. HAGAR, in his Official Capacity,
DEFENDANTS.

CASE NO. 4:26-cv-00531-DPM
JURY TRIAL DEMANDED

**BRIEF IN SUPPORT OF SEPARATE DEFENDANT CHRISTIAN WALKER MORPHIS'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff's four claims against Separate Defendant Christian Walker Morphis ("Morphis"), although styled differently, all rest on the same premise: that Morphis intentionally planted narcotics on Plaintiff and fabricated evidence to falsely incriminate her on December 17, 2023. Morphis denies that premise in his Answer, filed contemporaneously herewith. But the Court need not resolve that dispute to decide this Motion, because Plaintiff's own Complaint alleges an independent, undisputed basis for her arrest: Morphis told her she was under arrest for driving on a suspended license, which she "readily and truthfully admitted doing," before any of the conduct she claims was unlawful. Compl. ¶ 11. Under settled Fourth Amendment law, an arrest supported by probable cause for any offense is constitutionally valid regardless of the offense ultimately charged or whether probable cause existed for other offenses considered at the time. The Eighth Circuit most recently reaffirmed that rule in Ward v. City of Sherwood, Arkansas, No. 24-3316 (8th Cir. Apr. 28, 2026). Taking Plaintiff's own allegations as true, that rule forecloses Count I in its entirety and, with it, every other count that depends on the same no-probable-cause premise.

Morphis therefore moves to dismiss Count I (False Arrest), Count II (Substantive Due Process), Count III (Arkansas Civil Rights Act), and Count IV (Civil Conspiracy) in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6) and, because Morphis's Answer is being filed contemporaneously herewith, in the alternative pursuant to Federal Rule of Civil Procedure 12(c). This Motion is made in the alternative to, and without waiver of, Morphis's factual denial in his Answer that he intentionally planted narcotics or fabricated evidence to incriminate Plaintiff. As to Count I, Morphis further contends, in the alternative, that he is entitled to qualified immunity, and that even if the claim survived, Plaintiff's recoverable damages would be limited as a matter of law.

Four decisions cited in this Brief are not yet available in a bound reporter, or are unreported, and copies are attached for the Court's convenience: *Ward v. City of Sherwood, Arkansas*, No. 24-3316 (8th Cir. Apr. 28, 2026) (Exhibit A); *Lee Edward Brown v. City of Dermott, Arkansas*, No. 23-3174 (8th Cir. Aug. 20, 2025) (Exhibit B); *Lee Van Brown v. City of Dermott, Arkansas*, No. 23-3073, 151 F.4th 985 (8th Cir. 2025) (Exhibit C); and *Mysch v. Hutchins*, No. 3:25-cv-128-DPM, Doc. 22 (E.D. Ark. Jan. 28, 2026), appeal pending, No. 26-1341 (8th Cir.) (Exhibit D).

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts the complaint's well-pled factual allegations as true and construes them in the light most favorable to the plaintiff, but a complaint may be dismissed where its own factual allegations, taken as true, establish that the plaintiff cannot prevail as a matter of law. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (dismissal is

appropriate where a complaint's own allegations show that relief is barred). A claim that rests on a legal theory the law does not recognize, or that is legally foreclosed by controlling precedent, likewise fails to state a claim regardless of the factual detail pled in its support. *Iqbal*, 556 U.S. at 678.

Because Morphis's Answer is being filed contemporaneously with this Motion, the pleadings as to him will be closed once both are docketed. To the extent that timing bears on the proper procedural vehicle, Morphis brings this Motion in the alternative under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. That distinction is one of labeling only: "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law," which is "the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court accordingly need not choose between the two procedural rules to resolve this Motion; the same well-pled allegations, and the same law, control under either.

## III. ARGUMENT

### A. Count I Fails to State a Claim Because Plaintiff's Own Complaint Alleges an Independently Valid Basis for Her Arrest.

Plaintiff alleges that Morphis "initiated a traffic stop" after recognizing her truck from a prior encounter in which he had cited her for driving on a suspended license, and that when he pulled her over, he "told PLAINTIFF he would arrest her for driving on a suspended license which she readily and truthfully admitted doing." Compl. ¶¶ 10–11. Morphis then "handcuffed PLAINTIFF's hands behind her back, walked her to his police vehicle and then placed her in the backseat." *Id.* ¶ 11. Only afterward — "[a]bout 10 minutes" later — does the Complaint allege that Morphis engaged in the conduct at issue in this lawsuit, planting a bag of cocaine in his

patrol vehicle. *Id.* ¶ 12. Plaintiff does not allege that she was not, in fact, driving on a suspended license, that Morphis lacked a basis to believe she was, or that an arrest on that ground was in any way improper. To the contrary, she pleads her own admission.

Under the Fourth Amendment, "a warrantless arrest by a law officer is reasonable . . . where there is probable cause to believe that a criminal offense has been or is being committed," and that inquiry does not depend on the offense the officer actually invokes. *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004). The Supreme Court in *Devenpeck* squarely rejected the rule that the offense supporting probable cause must be "closely related" to the offense the officer identified at the time of arrest, holding that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* at 153. The Eighth Circuit applies the same rule: "[r]egardless of the ultimate offense charged, probable cause to arrest an individual exists if the facts known to the officer establish probable cause to arrest for any violation of law." *Hosea v. City of St. Paul*, 867 F.3d 949, 956 n.6 (8th Cir. 2017) (citing *Devenpeck*, 543 U.S. at 153–56). Because probable cause for one offense is enough, a court "need not address whether there was arguable probable cause" for any other offense once one valid basis for the arrest is established. *Id.* The Eighth Circuit reaffirmed this rule just months ago in *Ward v. City of Sherwood, Arkansas*, declining to reach whether the defendant officer had arguable probable cause for resisting-arrest or public-intoxication charges once it concluded he had arguable probable cause to arrest the plaintiff for disorderly conduct. No. 24-3316, slip op. at 6 (8th Cir. Apr. 28, 2026) (citing *Hosea*, 867 F.3d at 956 n.6).

This District applies the identical rule: a Fourth Amendment false-arrest claim "fails as a matter of law where the officer had probable cause to make the arrest," full stop, without regard to which offense the officer relied on. *Ratliff v. City of Shannon Hills*, 52 F. Supp. 3d 904, 912

(E.D. Ark. 2014). And the Eighth Circuit has expressly upheld an arrest as lawful where the officer had probable cause "to arrest [the plaintiff] for any crime at the time of the arrest," regardless of the offense ultimately invoked. *Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022) (citing *Devenpeck*, 543 U.S. at 153). The offense Plaintiff admits — driving on a suspended license — is not some marginal technicality either. The Supreme Court has held, on facts indistinguishable from these, that officers who "arrested [a driver] for the misdemeanor of driving on a suspended license" act reasonably under the Fourth Amendment even where state law would have permitted only a citation, because "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution," and "state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 167, 176 (2008). The Eighth Circuit has applied the same rule to the same offense, holding that an officer's reason to believe a driver's license was suspended supplies probable cause for a constitutionally valid arrest. *United States v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)). Any suggestion that the stop should have ended in a citation rather than a custodial arrest is thus foreclosed on the face of the Complaint.

*Ward* illustrates just how decisively that rule resolves this case. There, the plaintiff had grown belligerent with a responding officer during a noise-complaint call, and he argued on appeal that his conduct — including a remark that his sergeant should "go Code 3" — did not actually meet the statutory definition of disorderly conduct, and that the officer did not subjectively feel threatened. No. 24-3316, slip op. at 5–6. The Eighth Circuit held that neither point mattered: "the question . . . is not whether a jury could find that [the plaintiff's] actions were not actually threatening or tumultuous, or whether [the officer] subjectively felt threatened," but only "whether a reasonable officer objectively could have construed" the

plaintiff's conduct to establish probable cause — "a legal question for the court." *Id.* at 6. Once the court found arguable probable cause for disorderly conduct, it did not even need to decide whether the officer also had a valid basis to arrest for the two other offenses charged, resisting arrest and public intoxication. *Id.* This case is easier than *Ward*. *Ward* required the court to resolve a genuinely disputed characterization of ambiguous conduct. Here there is no dispute of any kind: Plaintiff's own Complaint alleges that Morphis told her she was under arrest for driving on a suspended license and that she "readily and truthfully admitted doing" exactly that. Compl. ¶ 11. If an officer's arguable, and openly contested, belief about ambiguous behavior was enough to defeat a Fourth Amendment claim in its entirety in *Ward*, an admitted violation defeats one *a fortiori* here.

That rule resolves Count I. Plaintiff's own Complaint establishes that Morphis arrested her — handcuffed her and placed her in his patrol vehicle — based on an offense she admittedly committed, before the conduct she claims was unlawful ever occurred. Compl. ¶¶ 10–12. A full custodial arrest for a minor offense such as driving on a suspended license is constitutionally permissible so long as it is supported by probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (Fourth Amendment permits a full custodial arrest for even a minor offense punishable only by a fine, where the officer has probable cause). Whatever the merits of Plaintiff's allegations that Morphis intentionally planted narcotics to frame her — which Morphis denies — they cannot retroactively convert an already lawful arrest, made on an admitted violation, into an unreasonable seizure. Count I fails to state a claim and should be dismissed.

**B. In the Alternative, Morphis Is Entitled to Qualified Immunity on Count I.**

If the Court does not dismiss Count I outright under Part III.A, Morphis is independently entitled to qualified immunity on that claim. Qualified immunity shields an officer from suit

unless he violated a constitutional right that was "clearly established" at the time of his conduct — a standard that protects all but "the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In the unlawful-arrest context, the Eighth Circuit measures that protection not by probable cause in fact but by "arguable probable cause" — "whether the officer should have known that the arrest violated plaintiff's clearly established right." *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). Arguable probable cause "exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable," and the inquiry turns on the viewpoint of an objectively reasonable officer, not the arresting officer's own. *Webster v. Westlake*, 41 F.4th at 1012 (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)); *Ratliff*, 52 F. Supp. 3d at 912.

On the Complaint's own allegations, at least arguable probable cause plainly existed: Plaintiff admits she was driving on a suspended license, that Morphis knew of the suspension from a prior citation, and that he told her he was arresting her for that offense. Compl. ¶¶ 10–11. A reasonable officer in Morphis's position could readily conclude that an admitted, ongoing offense justified the arrest, and that conclusion — whatever the ultimate merit of the separate drug charge — was objectively reasonable. *Webster v. Westlake*, 41 F.4th at 1012. Nor can Plaintiff satisfy the clearly-established prong: no precedent, let alone a controlling case or robust consensus, holds that arresting a driver who admits driving on a suspended license violates the Fourth Amendment, and controlling authority holds the opposite. *Wesby*, 583 U.S. at 65; *Virginia v. Moore*, 553 U.S. at 176. Because the arrest was supported by at least arguable probable cause and no clearly established law forbade it, Morphis is entitled to qualified immunity on Count I in the alternative to dismissal on the merits. *Copeland*, 613 F.3d at 880.

This Court applied the same reasoning earlier this year, at the pleading stage, to a claim that an officer lied to procure an arrest. In *Mysch v. Hutchins*, the plaintiff alleged that a police officer made false statements in the warrant affidavit that led to her arrest, and the Court, taking those allegations as true, nevertheless granted the officer's motion to dismiss on qualified immunity. No. 3:25-cv-128-DPM, Doc. 22 at 2–4 (E.D. Ark. Jan. 28, 2026), appeal pending, No. 26-1341 (8th Cir.) (Exhibit D). The officer was entitled to immunity "so long as the warrant affidavit, reconstructed without the alleged lies, would still provide probable cause to arrest," because "[p]robable cause is not a high bar." *Id.* at 3 (citing *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000), and quoting *Wesby*, 583 U.S. at 57). With the alleged falsehoods set aside, the facts that remained still established probable cause, and that conclusion disposed of the Fourth Amendment claim, the retaliatory-arrest claim, and the Arkansas malicious-prosecution claim alike. *Id.* at 4. *Mysch* arose under *Franks v. Delaware*, 438 U.S. 154 (1978), because the arrest there was by warrant, but its logic applies with at least equal force to a warrantless arrest, where the only question is whether the facts known to the officer supplied probable cause for any offense. The same exercise is dispositive here, and simpler. Set aside everything Plaintiff says was false — the cocaine, the report's description of her movements, the statements to the Drug Task Force — and what remains is the fact she pleads herself: she was driving on a suspended license and admitted it. Compl. ¶ 11. That remaining fact is not merely arguable probable cause; it is probable cause. Morphis is entitled to qualified immunity on Count I.

**C. Even If Count I Survived, Plaintiff's Recoverable Damages Would Be Limited to the Period Before Legal Process Issued.**

A further, independent limitation applies even if any part of Count I survived. A § 1983 false-arrest claim is the constitutional analogue of the common-law tort of false imprisonment, which redresses detention without legal process and "ends once the victim becomes held

pursuant to such process — when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007). "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* at 390 (quoting Keeton et al., Prosser & Keeton on the Law of Torts § 119, at 888 (5th ed. 1984)). The Eighth Circuit enforces that cap and has reaffirmed that "an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983," so a plaintiff seeking post-process damages must plead a distinct constitutional violation rather than relabel a false-arrest claim. *Martin v. Julian*, 18 F.4th 580, 584 (8th Cir. 2021) (quoting *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013)).

Virtually all of the harm Plaintiff pleads post-dates the initiation of legal process. She alleges that Morphis reported the matter to the Tenth Judicial Drug Task Force, "setting the criminal prosecution process in motion," Compl. ¶ 60, and was then charged with possession with intent to deliver and related offenses. Compl. ¶ 26. The concrete losses she identifies fall into two groups, and neither is recoverable on Count I. The first is the impoundment of her truck. Compl. ¶ 32. Plaintiff was driving that truck on a suspended license when she was stopped, and she was arrested for that offense before any of the conduct she challenges. Compl. ¶¶ 10–11. The Complaint does not allege that the truck was impounded because of the drug charge, and it could not plausibly do so: the impoundment of a vehicle whose driver has just been lawfully arrested for driving it on a suspended license is a consequence of that lawful arrest, not of anything Plaintiff says was unlawful. The second group — the $5,000 bond, the impound fees that accumulated while she remained in jail, the resulting loss of her truck and then her job, and the

emotional toll of the pending charges — flowed from the prosecution, that is, from detention pursuant to legal process. Compl. ¶¶ 32–33 (alleging that Plaintiff "was required to post a $5000 bond to be released," that "[b]y the time she was released from jail, her truck impound fees were more than she could afford," and that "[f]or months she faced prosecution"). Under *Wallace* and *Martin*, none of those post-process losses is recoverable on a false-arrest theory, and Plaintiff has pleaded no separate malicious-prosecution claim to reach it. *Wallace*, 549 U.S. at 390; *Martin*, 18 F.4th at 584. At a minimum, then, any surviving portion of Count I should be confined to the brief interval between the roadside arrest and Plaintiff's booking, and the damages described in Paragraphs 32 and 33 of the Complaint should be excluded from it.

**D. Count II Fails to State a Claim Because the Fourth Amendment, Not Substantive Due Process, Governs an Arrest, and Because No Fourth Amendment Violation Is Alleged in Any Event.**

Count II alleges that Morphis violated Plaintiff's substantive due process rights under the Fourteenth Amendment by arresting her "despite the absence of probable cause." Compl. ¶ 67. That is the same conduct, described in the same words, that underlies Count I's false-arrest claim. Compl. ¶¶ 59–61. The Supreme Court has squarely held that a plaintiff may not recover under the rubric of substantive due process for conduct that is covered by a more specific constitutional provision. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)); see also *Graham v. Connor*, 490 U.S. 386, 395 (1989) (claims that law enforcement officers effected an unlawful arrest or seizure of a free citizen "should be analyzed under the Fourth Amendment," not "the more generalized notion of 'substantive due process'").

The Eighth Circuit follows the same rule. In *Wilson v. Spain*, the court applied Fourth Amendment standards to an arrestee's claim and observed that "if [the plaintiff] cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome," substantive due process standard. 209 F.3d 713, 716 (8th Cir. 2000) (citing *County of Sacramento*, 523 U.S. at 845–54). That principle controls here for an independent reason as well: as explained in Part III.A, above, Plaintiff's own Complaint establishes that her arrest was supported by probable cause, so there was no unreasonable seizure for Count II to duplicate under any label. Count II adds nothing but a redundant, and legally foreclosed, characterization of the identical conduct at issue in Count I, and it should be dismissed as against Morphis.

Count II fails for a second, independent reason: it is precisely the claim the Eighth Circuit rejected in *Johnson v. McCarver*, 942 F.3d 405 (8th Cir. 2019). There, the plaintiff — like Plaintiff here — claimed that officers "deprived him of liberty without due process of law by falsifying a report of his arrest." *Id.* at 410. The Eighth Circuit held that "[a]ny deprivation of [the plaintiff's] liberty before his criminal trial . . . is governed by the Fourth Amendment and its prohibition on unreasonable seizures," not the Due Process Clause, and that "[a]ny post-trial claim based on the alleged false report requires a showing that the report was used to deprive [him] of liberty in some way." *Id.* at 410–11 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017), and *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012)). Because the jury acquitted the plaintiff and he "suffered no deprivation of liberty after the trial," the officers were entitled to qualified immunity on the due process claim. *Id.* at 411.

The same result follows here, for the same reason, without even reaching qualified immunity. Count II is, at bottom, a claim that Morphis's allegedly false incident report deprived

Plaintiff of liberty without due process. Compl. ¶¶ 63–68. But any deprivation of Plaintiff's liberty before her September 20, 2024 trial — her arrest, her detention, and the $5,000 bond she posted, Compl. ¶ 32 — is governed by the Fourth Amendment, not substantive due process, for the reasons already given in Part III.A, above, and earlier in this Part III.D. And any post-trial due process claim fails on its own terms, because Plaintiff — like the plaintiff in *Johnson* — was acquitted. Compl. ¶ 38 ("On September 20, 2024, PLAINTIFF was found not guilty of the drug charges."). The Complaint identifies no restriction on Plaintiff's liberty imposed after that acquittal; it alleges only financial and emotional harm flowing from the arrest and prosecution themselves, Compl. ¶¶ 31–33, which is precisely the kind of consequential injury *Johnson* held insufficient to sustain a due process claim once the underlying criminal case ends in acquittal. Count II fails for this reason as well.

The Eighth Circuit reaffirmed exactly this rule just last year, in companion appeals arising from the same Delta Division of this District. Lee Edward Brown, a police sergeant, was terminated after being charged with tampering with physical evidence and abuse of office, based on discrepancies between his own report and property form concerning quarters recovered during a robbery investigation. *Lee Edward Brown v. City of Dermott, Arkansas*, No. 23-3174, slip op. at 1–2 (8th Cir. Aug. 20, 2025). He sued the officer who flagged the discrepancy, alleging — as Plaintiff alleges here — that the officer had fabricated evidence and allegations against him. *See id.* at 4, 7. His substantive due process claim, "that [the officer] deprived him of due process by fabricating evidence against him," was "governed by the Fourth Amendment," not the Due Process Clause. *Id.* at 4 (citing *Johnson*, 942 F.3d at 410–11). His own Fourth Amendment malicious-prosecution claim likewise failed, because he "was never arrested and was only summoned to state court to answer for his charges," so the claim "fails for the same reason his

brother's did — he was never seized under the Fourth Amendment." *Id.* (citing *Lee Van Brown v. City of Dermott, Arkansas*, 151 F.4th 985, 990 (8th Cir. 2025), in which the court held that the brother "has not shown that he was seized within the meaning of the Fourth Amendment," because "[n]o court has held that a summons alone constitutes a seizure.").

Most instructive here, Lee Edward Brown's allegation that the officer lied did not save his claims even where a malicious-prosecution-type theory was properly before the court. The Eighth Circuit rejected his separate Arkansas-law malicious-prosecution claim — which, unlike its federal counterpart, does not require a seizure but does require an absence of probable cause — because "there was probable cause to charge him with tampering with evidence and abuse of office," built entirely on the undisputed, in part self-admitted, facts: Brown's own report conflicted with his property form, and Brown himself admitted the officer "probably" gave him the quarters. *Lee Edward Brown*, No. 23-3174, slip op. at 6 (citing *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 922 S.W.2d 327, 331 (Ark. 1996)). And his claim that the officer "fabricated false criminal allegations against him" failed on the merits: Brown "put forward no evidence supporting the falsity" of the officer's statements, so "no reasonable jury could find" that the officer lied at all. *Id.* at 7. Morphis's Answer, filed contemporaneously herewith, acknowledges that portions of his incident report describing Plaintiff's movements were inaccurate, while denying that the inaccuracy was knowing or intentional. Whatever significance that acknowledgment may have to Plaintiff's other claims, it does not matter here: the same logic that controlled in *Lee Edward Brown* controls this case. Plaintiff's own admitted fact, that she was driving on a suspended license, supplies probable cause independent of any inaccuracy elsewhere in the report, exactly as Brown's own admissions supplied probable cause independent of his dispute with the officer. Both decisions confirm the same governing principle at work in

Parts III.A and III.D, above: a claim that a government officer wrongly caused a criminal charge to be brought, or wrongly documented the basis for one, rises and falls with the Fourth Amendment's probable-cause and seizure requirements — and an officer's disputed or even acknowledged inaccuracies do not displace probable cause that independently exists on undisputed facts. Count II should be dismissed.

**E. Count IV Fails to State a Claim for Civil Conspiracy to Deny Access to the Courts.**

Count IV alleges that Morphis and Defendant Daniels "conspired, under color of law, to deprive PLAINTIFF of her First Amendment right to access the courts" by "frustrat[ing] PLAINTIFF's efforts to have criminal charges filed against MORPHIS." Compl. ¶¶ 74–75. This claim fails for five independent reasons.

1. Plaintiff Has Not Alleged, and Cannot Allege, an Actionable Denial of Access to the Courts. The Supreme Court has described two categories of access-to-courts claims: forward-looking claims, which seek to remove an obstacle to litigation not yet filed, and backward-looking claims, which seek relief for the loss of a specific case that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). Count IV is, at most, a backward-looking claim — it alleges that Morphis and Daniels frustrated Plaintiff's ability to have Morphis criminally charged. For a backward-looking claim, the complaint must identify both a "nonfrivolous," "arguable" underlying claim and a remedy "not otherwise available in some suit that may yet be brought," because "there is . . . no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415–16.

Plaintiff cannot make that showing, because she has not lost access to any remedy. She is at this moment litigating the very conduct that Count IV alleges was covered up — the same

arrest, the same absence of probable cause — in Count I, and she seeks the same compensatory and punitive damages in both counts. Compare Compl. ¶ 62 with Compl. ¶ 77. There is no separate remedy that a successful access-to-courts claim could provide that Count I does not already put within her reach. Count IV accordingly fails Harbury's threshold requirement and should be dismissed.

2. There Is No Constitutional Right to Have a Third Party Criminally Prosecuted. Count IV's theory of injury is that Morphis and Daniels frustrated Plaintiff's ability "to have criminal charges filed against MORPHIS." Compl. ¶ 75. But "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Because Plaintiff had no cognizable right to insist that Morphis be criminally charged in the first place, the alleged frustration of that interest cannot support a federal civil-rights claim. A conspiracy to interfere with an interest that is not itself constitutionally protected states no claim under § 1983.

3. A § 1983 Civil-Conspiracy Claim Requires an Actual Deprivation of a Distinct Constitutional Right, Which Plaintiff Has Not Pled. To prove a § 1983 conspiracy claim, a plaintiff must show that the defendant conspired with others to deprive her of a constitutional right, that a co-conspirator committed an overt act in furtherance of the conspiracy, and that the overt act injured the plaintiff — and, independently, that she suffered an actual deprivation of a constitutional right, since "a conspiracy to deprive is insufficient" standing alone. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (citation omitted). Because Count IV, as against Morphis, identifies no constitutional deprivation beyond the Fourth Amendment arrest already pled in Count I and the non-cognizable prosecutorial interest addressed above, it fails to allege the predicate deprivation that a civil-conspiracy claim requires.

4. There Was No Underlying Constitutional Violation to Conspire Toward. As explained in Part III.A, above, Plaintiff's own Complaint establishes that her arrest was supported by probable cause. Count IV alleges that Morphis and Daniels conspired "to frustrate PLAINTIFF's efforts to have criminal charges filed against MORPHIS," premised on the theory that Morphis "arrested PLAINTIFF on criminal charges for which he knew probable cause did not exist." Compl. ¶¶ 75–76. Because probable cause existed for Plaintiff's arrest as a matter of law, that premise fails, and with it the only constitutional deprivation Count IV identifies. For this reason as well, Count IV fails to state a claim and should be dismissed.

5. The Alleged Conspiracy Post-Dates Every Injury Plaintiff Pleads. A § 1983 conspiracy claim requires an overt act in furtherance of the conspiracy that injured the plaintiff. *Askew*, 191 F.3d at 957. The only agreement Count IV alleges is one between Morphis and Daniels, and the Complaint's own chronology shows that any such agreement could not have formed until after every injury Plaintiff pleads was complete. Plaintiff was arrested on December 17, 2023. Compl. ¶ 10. She was acquitted on September 20, 2024. Compl. ¶ 38. She did not file her citizen's complaint until October 15, 2024, and it was only then that Daniels opened the investigation through which he is alleged to have protected Morphis. Compl. ¶¶ 39, 41. The Complaint alleges no contact, communication, or agreement between Morphis and Daniels at any earlier time. An agreement reached in October 2024 cannot have caused an arrest ten months earlier or a prosecution that had already ended in Plaintiff's favor, and the bond, the impoundment, the loss of her truck and job, and the distress of the pending charges that Plaintiff pleads as her damages, Compl. ¶¶ 32–33, all preceded her acquittal. Count IV's attempt to tie the conspiracy to the arrest itself, Compl. ¶ 75 ("MORPHIS arrested PLAINTIFF on criminal charges for which he knew probable cause did not exist"), therefore fails on the face of the pleading. Separate Defendant

Hagar makes the same observation: Plaintiff "could not have sustained any damages from the investigation as it took place after she had been acquitted of drug charges." Doc. 6 at 2 n.1. The Complaint identifies no injury that any act in furtherance of the alleged conspiracy caused, and Count IV should be dismissed for this reason as well.

**<u>F. Count III Must Be Dismissed in Its Entirety, Because ACRA Is Coextensive with the Federal Claims, All of Which Fail.</u>**

Count III alleges a parallel claim under the Arkansas Civil Rights Act ("ACRA"). Plaintiff's own Complaint recognizes that "[i]n construing ACRA, federal courts are guided by state and federal decisions interpreting the federal Civil Rights Act," 42 U.S.C. § 1983. Compl. ¶ 70; see also Ark. Code Ann. § 16-123-105(c). The Eighth Circuit treats an ACRA claim as "generally . . . coextensive with § 1983 and analyzed under federal standards," so that when the federal claim fails, the parallel ACRA claim fails with it. *Arnold v. McClinton*, 112 F.4th 598, 605 (8th Cir. 2024) (quoting *McDaniel v. Neal*, 44 F.4th 1085, 1093 (8th Cir. 2022)). For unlawful-seizure claims specifically, this District has explained that "Article 2, Section 15 claims are analyzed in the same way as similar claims rooted in the Fourth Amendment," so that probable cause defeats an ACRA arrest claim exactly as it defeats the federal claim. *Ratliff*, 52 F. Supp. 3d at 914; see also *Mysch*, Doc. 22 at 2 (analyzing federal claims "in step with" parallel Arkansas constitutional and ACRA claims) (citing *Glasper v. City of Hughes*, 269 F. Supp. 3d 875, 887 (E.D. Ark. 2017)). Plaintiff pleads no independent state-constitutional theory that would make the Arkansas Constitution more protective than the Fourth Amendment on these facts, and Count III rests on the same allegations underlying Counts I, II, and IV — that Morphis's conduct was "unreasonable" and violated Plaintiff's rights under the Arkansas Constitution because he lacked probable cause to arrest her and covered up his misconduct. Compl. ¶¶ 71–72. Because each of those federal theories fails for the reasons set out in Sections

III.A through III.E, above, Count III fails to that same extent and should be dismissed in its entirety.

**G. In the Alternative, Arkansas Statutory Immunity Independently Bars the Arrest-Based ACRA Damages Claim.**

As a further, fallback ground as to the arrest-based portion of Count III, Arkansas law grants state employees "statutory immunity from civil liability for non-malicious acts occurring within the course of their employment" under Ark. Code Ann. § 19-10-305(a). *Simons v. Marshall*, 369 Ark. 447, 452, 255 S.W.3d 838, 842 (2007). That immunity is "similar to that provided for federal civil-rights claims except for the non-malicious requirement." *Thurairajah v. City of Fort Smith*, 3 F.4th 1017, 1024 (8th Cir. 2021). Morphis was an Arkansas State Police trooper acting within the scope of his employment when he arrested Plaintiff, Compl. ¶ 4, placing his conduct within the statute's baseline coverage.

Candor requires acknowledging that this immunity carries a malice exception that Plaintiff's allegations may satisfy. To overcome the immunity, a plaintiff "must allege sufficient facts in his or her complaint to support the claim of malicious conduct," *Thurairajah*, 3 F.4th at 1023 (quoting *Fuqua v. Flowers*, 341 Ark. 901, 20 S.W.3d 388, 391 (2000)), and unlike the bare conclusions found insufficient in *Simons*, 369 Ark. 447, Plaintiff here alleges specific, intentional wrongdoing — that Morphis "planted drugs on PLAINTIFF in an attempt to frame her." Compl. at 1. If credited at the pleading stage, those allegations may supply the malice that defeats statutory immunity. Morphis accordingly presents this immunity as a secondary, fallback ground rather than a lead theory for dismissing the arrest-based portion of Count III; the probable-cause and coextensiveness arguments set out above remain the durable bases for dismissal.

**IV. CONCLUSION**

For the foregoing reasons, Separate Defendant Christian Walker Morphis respectfully requests that the Court dismiss Counts I, II, III, and IV as against him, with prejudice. In the alternative as to Count I, Morphis requests a ruling that he is entitled to qualified immunity, or that any surviving claim is confined to damages incurred before legal process issued. Morphis further requests all other just and proper relief.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
310 Natural Resources Drive, Ste. 2
Little Rock, Arkansas 72205
(501) 315-1910 – Telephone
Counsel for Separate Defendant Christian Walker Morphis

By: /s/ Luther Oneal Sutter
Luther Oneal Sutter, Esq., ARBN 95-031
luther.sutterlaw@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Luther Oneal Sutter
Luther Oneal Sutter